UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JAQUELINE LEGARRETA,<br><br>Plaintiff,<br><br>v.<br><br>BTF3, LLC d/b/a PAPER MOON (RICHMOND CI),<br><br>IMAGINARY IMAGES, INC. d/b/a PAPER MOON,<br><br>ARKESIA INC. d/b/a CLUB ROUGE,<br><br>PYLIARIS CORPORATION d/b/a STRICKLY BUSINESS TRANSPORTATION, MID-ATLANTIC SHOWCLUBS, and KISS MY GRITS CAFE, and<br><br>WILLIAM PYLIARIS,<br><br>Defendants. | Civil Action No. 3:21cv714 |

# COMPLAINT

Plaintiff Jaqueline Legarreta moves for judgment against Defendants as follows:

## Introduction

1. This is a claim to recover for illegal retaliation by Defendants in violation of the Title VII of the Civil Rights Act of 1964 as amended ("Title VII), and 42 U.S.C. § 1981. Plaintiff worked as a manager for several strip clubs owned by Defendants and opposed the racially discriminatory hiring practices imposed by the owner William Pyliaris. Shortly after Plaintiff hired a Black dancer for Paper Moon Southside (one of Defendants' clubs), the Defendants instructed Plaintiff to fire that dancer because she was Black. Specifically, Defendants told Plaintiff that she would be discharged if the Black dancer showed up to dance at Paper Moon Southside. Plaintiff refused to engage in a race-based termination of the Black dancer. In retaliation for Plaintiff's opposition of race discrimination, Defendants promptly

terminated Plaintiff. Plaintiff timely filed a Charge of discrimination with the EEOC, and has exhausted her administrative remedies.

## Jurisdiction and Venue

2. This Court has jurisdiction for claims arising under federal law, in this case the claims arise under 42 U.S.C. §2000e, et seq., and 42 U.S. C § 1981.

3. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) since the acts and omissions giving rise to this lawsuit have taken place in the Eastern District of Virginia, Richmond Division.

4. Defendants are subject to personal jurisdiction in the Commonwealth of Virginia.

## Parties

5. Jaqueline Legarreta ("Legarreta" or "Plaintiff") is a resident and citizen of Virginia. Plaintiff was employed by Defendants to work at various clubs that were commonly owned, including Club Rouge and Paper Moon, from approximately 2015 to April 13, 2019. At the time of her termination, Legarreta was a Manager for the Paper Moon Southside club.

6. William Pyliaris ("Pyliaris") is the current or former owner and operator of several adult entertainment clubs, including Paper Moon (Southside), and Club Rouge where Plaintiff worked, and from which she was fired. Pyliaris had ultimate authority over corporate operations as well as Plaintiffs' terms and conditions of employment at all of the Defendant clubs.  Given his singular control over the employment policies of his clubs, Pyliaris meets the definition of "employer" as contemplated by Title VII, or is a joint employer with the other Defendants.

7. BTF3, LLC, d/b/a Paper Moon (Richmond CI), (hereinafter "BTF3"), is a Virginia Limited Liability Company with its principal office in Richmond, VA.  Defendants

internally refer to BTF3 as "Paper Moon Scott's Addition" or Paper Moon SA," to distinguish this club from the other "Paper Moon" club they own on Midlothian Turnpike. BTF3 is one of several corporate entities and strip clubs owned or controlled by William Pyliaris. Pyliaris is the Member or Manager and Registered Agent for BTF3. BTF3 meets the definition of "employer" as contemplated by Title VII, or is a joint employer with the other Defendants.

8. Imaginary Images, Inc. d/b/a Paper Moon, (hereinafter "Paper Moon"), is a Virginia corporation with its principal office on Midlothian Turnpike in the City of Richmond, Virginia.  Defendants internally refer to Paper Moon as "Paper Moon Southside" or Paper Moon SS," to distinguish this club from the other "Paper Moon" club (BTF3) they own in the Scott's Addition neighborhood. Paper Moon is one of several corporate entities and strip clubs owned or controlled by William Pyliaris. Pyliaris is the President and Registered Agent for Paper Moon. Paper Moon meets the definition of "employer" as contemplated by Title VII, or is a joint employer with the other Defendants.

9. Arkesia, Inc. d/b/a Club Rouge, (hereinafter "Club Rouge"), is a Virginia corporation with its principal office in the City of Richmond, Virginia.  Club Rouge is one of several corporate entities and strip clubs owned or controlled by William Pyliaris. Pyliaris is the President and Registered Agent for Club Rouge. Club Rouge meets the definition of "employer" as contemplated by Title VII, or is a joint employer with the other Defendants.

10. Pyliaris Corporation d/b/a Strickly Business Transportation, Mid-Atlantic Showclubs and Kiss My Grits Café (hereinafter "Pyliaris Corp."), is a Virginia corporation with its principal office in the City of Richmond, Virginia.  Pyliaris Corp. is one of several corporate entities owned or controlled by William Pyliaris in connection with his strip club business. Pyliaris is the President and Registered Agent for Pyliaris Corp. Pyliaris Corp. meets the

definition of "employer" as contemplated by Title VII, or is a joint employer with the other Defendants.

11. Pyliaris, BTF3, Paper Moon, Club Rouge, and Pyliaris Corp. are collectively referred to herein as "Defendants."

12. Defendants are so integrated in their operations of the various strip clubs, and Pyliaris wields unilateral ultimate authority over the hiring, firing, and racially-based employment practices of his strip clubs, and all Defendants share common ownership and centralized management responsibility over employer functions, that Defendants are a joint employer of Plaintiff and other employees of the clubs. Defendants are jointly and severally liable for the acts complained of herein.

## Factual Allegations

13. For the past five or more years, Pyliaris is or was the common owner of a number of strip clubs in the Richmond, Virginia area, including Paper Moon (Southside), Paper Moon (Scott's Addition), Club Rouge, Candy Bar, Baby Dolls, and Daddy Rabbits.

14. In addition to strip clubs, Pyliaris was the President and shareholder of Pyliaris Corp., as well as two or more restaurants in Richmond during the relevant time period, including 3rd Street Diner and N.Y. Steakhouse.

15. Pyliaris Corp., the various strip clubs, and the above-named restaurants, were centrally owned and controlled by Pyliaris.

16. During the relevant time period, Pyliaris employed a CEO or general manager ("GM") to run the day to day operations of his business, although Pyliaris maintained absolute and total control.

17. The GM during the relevant period was Mike Dickinson.

**Race-Based Staffing**

18. Pyliaris ran his strip club empire using a rigid race-based hiring policy.

19. Pyliaris, as carried out by Dickinson, categorized his strip clubs as "white" clubs and "urban" clubs.

20. Defendants internally referred to the "white" clubs as "gentlemen" clubs, or "GC's" (hereinafter "White Clubs").

21. The White Clubs were Paper Moon (Scotts Addition), Paper Moon (Southside), Club Rouge, and Pure Pleasure.

22. The "urban" clubs owned by Pyliaris during the relevant time frame included Daddy Rabbits, Baby Dolls, End Zone, and Candy Bar, (hereinafter "Black Clubs").

23. Pyliaris directed that his White Clubs hire only white or light-skinned dancers, or at most, no more than one or two dark-skinned or Black dancers on a single weekend shift.

24. Pyliaris directed his GM Dickinson, and individual club managers to hire white dancers at his White Clubs, and to direct any/all Black dancers to his Black Clubs.

25. There is high turnover of dancers in the strip club industry. As a result, Defendants are constantly advertising and looking to hire dancers.

26. Pyliaris directed, and Dickenson and other managers carried out, a process by which job applications by white applicants were forwarded only to the managers of the White Clubs, and job applications by non-white dancers were forwarded to managers of the Black Clubs.

27. Pyliaris personally checked in on each of his White Clubs from time to time to ensure that his race-based staffing policy was being adhered to by each of his White Clubs.

28. Pyliaris also directed Dickinson to strictly enforce his race-based staffing policy.

29. When Dickinson saw an African American dancer at Club Rouge, he told her that she was not allowed to dance "here," and that she could only dance at Candy Bar.

30. Pyliaris and Dickinson instructed individual managers of the White Clubs not to hire any Black dancers, but rather to direct them to apply to one of the Black Clubs owned by Pyliaris.

31. In 2019 Dickinson sent a text message to a Club Rouge manager stating: "Don't let any cb or rabbit girls infiltrate rouge". "CB" or "cb" is an abbreviation for Candy Bar, and "rabbit" is short hand for Daddy Rabbits, both being one of the Black Clubs. Mr. Dickinson was blatantly stating that Black dancers should not be allowed to "infiltrate" Club Rouge, one of the White Clubs.

**Retaliation**

32. Plaintiff Jaqueline Legarreta was hired by Defendants to manage individual strip clubs beginning in or around March 2016 through the date of her termination on or about April 13, 2019.

33. At the time of her termination, Legarreta managed Paper Moon Southside.

34. On or about April 12, 2019, Legarreta hired an African American dancer who applied and auditioned on that day.

35. Legarreta showed a picture of the new hire to Dickinson, who replied that she was "black and ugly" and directed Legarreta to fire her.

36. Legarreta refused, stating that the girl is beautiful.

37. Dickinson told Legarreta that it was coming from "Billy" (meaning Pyliaris) that if this African American dancer reported to Paper Moon Southside for work the next day, he would fire Legarreta for insubordination.

-6-

38. The next day, April 13, 2019, the African American dancer showed up to perform, and Legarreta was promptly fired by Dickinson.

39. Dickinson stated that "Billy wants this done."

40. Legarreta asked, "so you're firing me because I refuse to discriminate based on race?"

41. Dickinson confirmed that Legarreta was being fired, and said, "get the f—k out."

42. Legarreta has suffered loss of employment, wages, tips, and emotional distress as a result of Defendants' actions.

43. Defendants acted intentionally, with malice, or with reckless indifference to Legarreta's right to be free from unlawful retaliation.

## COUNT I – Title VII Retaliation

44. On or about April 12, 2019, Legarreta refused to engage in Defendants' race-based hiring policy for the club that she managed.

45. Legarreta opposed Defendants' racially motivated and discriminatory instruction to terminate an African American dancer.

46. Defendants retaliated against Legarreta for engaging in protected activity, and fired Legarreta because she opposed Defendants' racial discrimination. Legarreta refused to terminate a dancer because of her race.

47. Defendants' termination of Legarreta violates Title VII's anti-retaliation provision set forth in 42 USC § 2000e-3.

48. Defendants' intentionally and maliciously engaged in unlawful employment practices in violation of Title VII including making hiring/firing decisions, and segregating

employees, based on race, and by retaliating against Legarreta for opposing such unlawful practice.

49. Legarreta timely filed a Charge of Discrimination with the EEOC.

50. The EEOC found "reasonable cause" that Defendants violated Title VII by terminating Legarreta in retaliation for her protected activity.

51. The EEOC issue a "right to sue" letter on August 16, 2021.

## COUNT II – § 1981 Retaliation

52. On or about April 12, 2019, Legarreta refused to engage in Defendants' race-based hiring policy for the club that she managed.

53. Legarreta opposed Defendants' racially motivated and discriminatory instruction to terminate an African American dancer.

54. Defendants retaliated against Legarreta for engaging in protected activity, and fired Legarreta because she opposed Defendants' racial discrimination. Legarreta refused to terminate a dancer because of her race.

55. Defendants' termination of Legarreta violates 42 USC § 1981's prohibition of race discrimination in the making and enforcing of contracts, including employment.

56. Defendants' intentionally and maliciously engaged in unlawful employment practices in violation of 42 USC § 1981 including making hiring/firing decisions, and segregating employees, based on race, and by retaliating against Legarreta for opposing such unlawful practices.

## PRAYER FOR RELIEF

Plaintiff seeks complete relief against Defendants, jointly and severally, including:

1. an award of compensatory damages;

2. an award of backpay, plus interest, for all lost wages, tips, and other compensation;

3. an award of punitive damages;

4. an award of equitable or injunctive including reinstatement, or front pay in lieu of reinstatement;

5. an order enjoining Defendants from engaging in unlawful discrimination in the segregation, hiring, and firing of dancers based on race, and to immediately end the practice of maintaining racial quotas at its White Clubs and Black Clubs;

6. an award of prejudgment and post judgement interest;

7. an award of attorneys' fees, expert fees, and all costs of litigation incurred for and on behalf of Plaintiff in this matter; and

8. an order granting such other and further legal or equitable relief as may be proper, necessary or appropriate.


Plaintiff hereby demands **trial by jury**.

                                          Respectfully submitted,
                                          **JAQUELINE LEGARRETA**
                                          Plaintiff

                                          By: /s/ Craig J. Curwood
                                          Craig J. Curwood (VSB No. 43975)
                                          Paul M. Falabella (VSB No. 81199)
                                          BUTLER CURWOOD. P.C.
                                          140 Virginia Street, Suite 302
                                          Richmond, Virginia 23219
                                          804-648-4848 - Telephone
                                          804-237-0413 - Fax
                                          craig@butlercurwood.com
                                          paul@butlercurwood.com

                                          *Attorneys for Plaintiff*